UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCOS MADRIGAL and
ELSA MADRIGAL,

        Plaintiffs,

-vs-   CASE NO. 01-73911
    HON. ARTHUR J. TARNOW
    MAGISTRATE JUDGE SCHEER

CITY OF ALLEN PARK and
IT'S POLICE CHIEF KENNETH
DOBSON IN HIS OFFICIAL AND
UNOFFICIAL CAPACITY, Jointly
and Severally,

        Defendants.

RAYMOND GUZALL III (P60980)
Attorney for Plaintiffs
30665 Northwestern Hwy., Suite 255
Farmington Hills, MI 48334
(248) 538-0711

PAUL E. PEDERSEN (P 24355)
Attorney for Defendants
4057 Pioneer Drive, Suite 300
Commerce Township, MI 48390
(248) 363-6400

KENNETH D. KRUSE (P16271)
Attorney for Defendants
7000 Roosevelt Ave., #100
Allen Park, MI 48101
(313) 386-1111

S. RANDALL FIELD (P31841)
Co-Counsel for Defendants
34405 W. Twelve Mile Rd., Ste. 200
Farmington Hills, MI 48331
(248) 489-4100

_____/

## NOTICE OF HEARING

## STATEMENT OF COMPLIANCE WITH LOCAL RULE 17(a)

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## BRIEF IN SUPPORT OF MOTION

## AFFIDAVIT OF PAUL E. PEDERSEN



## STATEMENT OF COMPLIANCE WITH LOCAL RULE 17(a)

The undersigned counsel for Defendants talked to Plaintiff's counsel, Raymond Guzall, in person on August 29, 2002, and requested concurrence in the relief sought by the attached Motion. Mr. Guzall declined to concur.

                                       PEDERSEN, KEENAN, KING,
                                       WACHSBERG & ANDRZEJAK, P.C.

                                       PAUL E. PEDERSEN (P 24355)
                                       Attorney for Defendants
                                       4057 Pioneer Drive, Suite 300
                                       Commerce Twp., Michigan 48390-1363
                                       (248) 363-6400

Dated: September 3, 2002

## NOTICE OF HEARING

TO: Raymond Guzall, Esq.
Attorneys for Plaintiffs

PLEASE TAKE NOTICE that the attached Motion for Summary Judgment will be brought on for hearing before the Honorable Arthur J. Tarnow on a day and at a time to be set by the Court.

                                          PEDERSEN, KEENAN, KING,
                                          WACHSBERG & ANDRZEJAK, P.C.

                                          PAUL E. PEDERSEN (P 24355)
                                          Attorney for Defendants
                                          4057 Pioneer Drive, Suite 300
                                          Commerce Twp., Michigan 48390-1363
                                          (248) 363-6400

Dated: September 3, 2002

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COMES the above-named Defendants, CITY OF ALLEN PARK and it's POLICE CHIEF KENNETH DOBSON, by and through their attorneys, Pedersen, Keenan, King, Wachsberg & Andrzejak, P.C., and in support of their Motion for Summary Judgment state as follows:

1. This Motion is filed pursuant to Federal Rule of Civil Procedure, Rule 56.

2. The Plaintiffs have filed a claim of harassment, racial discrimination, and discrimination against national origin in Count I of the Complaint, false arrest and imprisonment in Count II, and a claim for loss of consortium in Count III. The discrimination claims have been filed pursuant to the Elliott-Larsen Civil Rights Act, MCL 37.2101, et seq, and Title VII, Civil Rights Act of 1964, § 701, et seq, 42 U.S.C.A. § 2000e, et seq. A copy of the Complaint is attached hereto and marked as Exhibit #1.

3. The discriminatory actions are outlined in the Complaint and consist of five alleged discriminatory and wrongful discipline charges. As far as #1 through #4 as identified in the Complaint are concerned, Marcos Madrigal signed off on those acknowledging that he was culpable and accepted the discipline. Copies of those exhibits from his deposition are attached hereto and marked as Exhibits #2, #3, #4 and #5. The fifth discipline has recently been resolved and resulted in Marcos Madrigal receiving a one year probationary status due to the alleged wrongful conduct.

4. The Plaintiffs' claim is one wherein it is alleged that his employment was adversely affected on the basis of race. In that regard, Interrogatories were submitted,

specifically Interrogatory #9, which reads as follows:

> Q. Name any and all police officers employed by the Allen Park Police Department that you claim have been treated differently than yourself by the Allen Park Police Department.

The answer to Interrogatory #9, which has not been supplemented pursuant to the Rules, just states "see Plaintiffs' witness list." The Plaintiffs have never supplemented their responses as might be required by Rule 26(e).

5. The Plaintiffs have failed to produce any evidence whatsoever to suggest that the Defendants' discipline of Marcos Madrigal was in any way, shape or manner racially motivated, nor have they presented any evidence that the conduct of the Defendants was in violation of either the Elliott-Larsen Civil Rights Act or Title VII, Civil Rights Act of 1964, § 701, et seq, 42 U.S.C.A. § 2000e.

6. There is no basis for the false imprisonment and the false arrest allegations, as there is no question but that there was in fact a complaint for domestic violence which justified the officers for making an arrest and placing someone in jail pursuant to the statutes and laws of the State of Michigan and as acknowledged by Marcos Madrigal in his deposition. There has been no testimony offered to suggest that the prosecutors failed to pursue the prosecution based upon the premise that there was no domestic violence incident, but rather the only evidence is that they just did not proceed for whatever their own reasons were.

7. The Plaintiffs have failed to produce any evidence whatsoever in support of the Plaintiffs' claims, and the Defendants' Motion for Summary Judgment should be granted for those reasons stated above and for those reasons as further stated within the

Brief in Support of the Motion.

WHEREFORE, your Defendants pray that this Honorable Court grant their Motion for Summary Judgment, together with the awarding of costs and attorney fees so wrongfully incurred.

>PEDERSEN, KEENAN, KING,
>WACHSBERG & ANDRZEJAK, P.C.
>
>
>PAUL E. PEDERSEN (P 24355)
>Attorney for Defendants
>4057 Pioneer Drive, Suite 300
>Commerce Twp., Michigan 48390-1363
>(248) 363-6400

## BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Plaintiffs have made allegations of discrimination under both the State and Federal Civil Rights Act. 42 U.S.C.A. § 2000e-2 states in part as follows:

> (e) Employer practices.
> It shall be an unlawful employment practice for an employer –
> (1) to fail or refuse to hire or to discharge an individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

The burden of proof in a disparate impact case is outlined in subsection (k) in part as follows:

-3-

> (k) Burden of proof in disparate impact cases.
> (1)(A) An unlawful employment practice based on disparate impact is established under this subchapter only if –
>
> (i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with this necessity; or
> (ii) the complaining party makes the demonstration described in subparagraph (C) with respect to an alternative employment practice and the respondent refuses to adopt such alternative employment practice.

The Plaintiffs have offered no evidence whatsoever as far as the burden of proof is required in a disparate impact case.

*Thomas v Autumn Woods Residential Health Care Facility*, 905 F. Supp. 4014 (1995) talked about this type of a claim pursuant to this section, as well as this type of a claim pursuant to the Elliott-Larsen Civil Rights Act. The court noted at page 418 that summary judgment is appropriate where the moving party, in this case the Defendants, demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case and upon which the non-moving party would bear the burden of proof at trial. Further, the court noted that in considering the motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. At page 419 of the court's opinion in the *Thomas* case, *supra*, the court states:

-4-

> Thomas has premised her claim of race discrimination against Autumn Woods upon violations of the Elliott-Larsen Civil Rights Act and Title VII. The burden of proof in an employment discrimination case rests with the plaintiff to establish a prima facie case that her employment was adversely affected on the basis of race. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed. 2d 668 (1972). This requires that the plaintiff establish by a preponderance of the evidence that (a) she was a member of a protected class; (2) she was subject to an adverse employment action; (3) she was qualified for the job; and (4) for the same or similar conduct she was treated differently than similarly situated non-minority employees.

The court goes on to indicate that the same analysis applies to claims brought under Title VII and the Elliott-Larsen Civil Rights Act, citing *Brockelhurst v PPG Industries, Inc.,* 836 F.Supp. 1354 (E.D. Mich. 1993).

The Plaintiffs make allegations of intentional discrimination on the part of Chief Dobson and the Defendants. To establish a claim of intentional discrimination, the Plaintiffs must show the following:

(1) That he was a member of a protected class;

(2) That he was discharged; and

(3) The person responsible for the termination decision was (a) predisposed to discriminate against persons in the protected class and (b) actually acted on that predisposition in the discharge decision. *Thomas v Autumn Woods Residential Health Care Facility,* p. 420, *supra.*

Looking at this particular case, it must be established that Chief Dobson was predisposed to discriminate against persons in the protected class and actually acted on that predisposition in the discharge decision. There is no testimony that he was

-5-

predisposed to discriminate against persons of Marcos Madrigal's race, nor is there any evidence whatsoever that Chief Dobson actually acted on that predisposition in the decisions affecting Marcos Madrigal. There has been an issue presented through the testimony of Curtis McGuire and Gary Dell regarding a statement that may have been made with Chief Dobson, Curtis McGuire and Gary Dell sitting in the Chief's office. There is an issue as to whether or not Chief Dobson may have referred to Marcos Madrigal as a Mexican. However, there has never been any testimony that Chief Dobson acted in any way, shape or manner adversely towards Marcos Madrigal because he was Mexican. It is noteworthy to note that the first four discriminatory action disciplines complained of by Marcos Madrigal were acknowledged by him and he accepted the discipline that he was given. He signed off on those, as evidence by Exhibits #2 through #5. The fifth disciplinary action taken against Marcos Madrigal has resulted in the Civil Service Commission putting him on one year's probation.

Marcos Madrigal alleges that the conduct of the Defendants violated his rights pursuant to the Elliott-Larsen Civil Rights Act, MCLA 37.2101, et seq. MCLA 37.2202 provides for employer prohibited acts and states in part as follows:

> (1) An employer shall not do any of the following:
> (a) fail or refuse to hire or recruit, discharge, or otherwise discriminate against any individual with respect to employment, compensation, or a term, condition, or privilege of employment because of religion, race, color, national origin, age, sex, height, weight, or marital status.

*Merillat v MSU*, 207 Mich App 240 (1994) discusses a prima facie case of discrimination under the theory of disparate treatment. Therein, the court notes that it

-6-

must be shown that a plaintiff was a member of class entitled to protection and was treated differently from members of a different class for the same or similar conduct. In the *Merillat* case, the plaintiff did show that she was a member of a protected class, namely that she was white, unmarried and female, but failed to satisfy the second prong of the test. She could not show that she had met the second prong of the test. She did make an allegation that insubordination had never been a cause for termination against any employee of the DPS who happened to be African-American or male. However, she did not allege facts to show that any person or persons in these groups had ever failed to undergo an ordered physical or psychological evaluation. The plaintiff failed to allege facts in the *Merillat* case to show that the defendants ever had reason to order any persons from one of these groups to undergo a psychological evaluation and thus plaintiff did not show facts that she was treated differently from members of a different class for the same or similar conduct. It is important to note that the conduct alleged must be the same or similar. In looking back at this case, Marcos Madrigal has never shown that there was another officer with his record that was treated differently than he was.

*Farmer v The Continental Insurance Co.*, 955 F.Supp. 970 (1997) talks about employment discrimination under the disparate impact theory. The plaintiff's allegation in the *Farmer* case was that she was demoted because she was black, in violation of 42 U.S.C. § 1981 and Title VII, 42 U.S.C. 2000e, et seq. She also alleged that her demotion was in retaliation for her complaint regarding wage disparities between black and white employees. The court noted in this case that direct evidence may be provided to prove the claim. Under the direct evidence method, the plaintiff must prove through direct

-7-

evidence that the employment decision at issue was based upon an impermissible factor. Once that has been done (a prima facie case has been made), the defendant must respond by proving by preponderance of the evidence that it would have made the same employment decision even if it had not taken the impermissible factor into account. In this instance, the Plaintiffs can show no direct evidence that the Defendants discriminated against Marcos Madrigal. Thus, they have to move to the indirect burden-shifting method. At page 976, the court stated:

> To establish a *prima facie* case under the indirect burden-shifting method of proof enunciated in *McDonell Douglas*, Farmer must show: (1) that she belongs to a protected group; (2) that she performed satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that similarly situated employees outside the classification received more favorable treatment.

Looking again to this particular case, Marcos Madrigal can point to no similarly situated individuals outside of his class that were treated any differently than he was. He may produce evidence in response to this Motion to suggest that maybe somebody was not placed in jail or arrested when there was a call for a domestic violence charge. However, the situations are distinguishable based upon the timing, as there was a change in the law in 1995 and later, as well as circumstances. In many of the instances, it was a question of whether the officer may have been the one involved in the domestic violence or was the object of the domestic violence. Marcos Madrigal can point to no other officer who has had the same charges brought against him of the same type and number that he has. He can show no one that was treated any differently than he was.

There is a claim in the Complaint for retaliatory conduct on the part of the

-8-

Defendants. The court in the *Farmer* case, *supra*, discusses retaliation and talks about the evidence necessary to prove such a case. At page 978, the court stated in part as follows:

> To establish a *prima facie* case of retaliation, Farmer must show that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the protected expression and the adverse action.

Returning to the facts of this case, Marcos Madrigal can show no retaliatory behavior on the part of anyone in reference to his employment situation. One must be mindful of the fact that Marcos Madrigal, with the exception of the first discipline when he was on a probationary status, had Union representation. Many of the disciplines that he received were negotiated with the assistance of the Union and agreed to by Marcos Madrigal. He had to acknowledge the wrongdoing and accept the discipline he received.

Count II of the Complaint reads as follows:

## COUNT II
## FALSE ARREST AND IMPRISONMENT

56. Plaintiff incorporates paragraphs 1-55 word for word.
57. On June 14, 2000, Officer Madrigal was allegedly involved in a domestic dispute which resulted in his wrongful and false arrest when he spent approximate 20 plus hour stay in a maximum security prison cell.
58. No charges were brought against Your Plaintiff Marcos Madrigal as to the alleged domestic dispute as the prosecutor refused to move forward with any case, further the support of Plaintiff's wrongful and false arrest.

*Adams v Metiva*, 31 F.3d. 375 (6th Cir. 1994) discusses the issue of false imprisonment per State Court claims. First and foremost, but must be noted that his case

dealt with a police officer effectuating an arrest and whether or not claims of false arrest and false imprisonment may be barred by the Michigan Governmental Immunity Act, MCLA § 691.1407. As far as the false arrest claim would be concerned, one must allege gross negligence on the part of the officer, which is not pled in this particular case. As such, this particular claim would be barred by governmental immunity.

At note 61 in the opinion, the court states as follows:

> In order to prevail on a claim of false arrest and false imprisonment, a plaintiff must show that his arrest was not legal, i.e., without probable cause. *Brewer v. Perrin*, 132 Mich. App. 520, 527, 349 N.W.2d 198 (1984) (citing *Lewis v. Farmer Jack Division, Inc.*, 415 Mich. 212, 218 n. 2, 327 N.W.2d 893 (1982)). Whether or not a plaintiff could actually have been convicted of the charges is irrelevant because actual innocence is not an element of the tort of false arrest.

The Complaint as filed by Elsa Madrigal has been made an exhibit. As one can see, there is at least a basis for the arrest under the domestic violence laws of the State of Michigan. Even according to Marcos Madrigal, there was a basis for the arrest if one believes that there was an assault and battery and there was a domestic violence incident. He suggested in his deposition, pages 187-293, that the officers have to investigate and they have to make a decision as to whether an arrest should be made or not made. There was a decision made in this case to make the arrest, which was lawful. There is no basis for the allegations of false imprisonment and false arrest. They are barred by governmental immunity.

The remaining portions of the Complaint talk about further discrimination beginning at Paragraph 41 and continuing through Paragraph 55. However, when looking at those

-10-

things, it is hard to tell what may have occurred or who may have been responsible for the alleged acts.

Paragraph 41 talks about a complaint by the Plaintiff that Officer Scott and Defendant Dobson provided completely opposite testimony in a hearing which went uninvestigated by the City. However, that is not correct. Mayor Levon King has testified that that was considered, and as far as he was concerned, it was a difference of opinion between the two as to what was actually stated. Furthermore, Officer Scott has been deposed and his deposition testimony is in line with what the Chief has testified to. There is no discrepancy and that issue has been discussed by the City and a determination was made not to proceed with any type of charges, as in the opinion of the City, there was no basis for the same. It was considered, but the City opted not to issue charges.

Marcos Madrigal alleges that Defendant Dobson prevented him from participating in programs he was eligible to participate in and which he requested. However, there are procedures to be followed in the City if that occurs, which occurred, and was resolved pursuant to the internal policies and regulations of the department. Again, there was nothing discriminatory in that regard. There is absolutely no basis, other than the allegation as made, to suggest that there was any discriminatory motive involved in the decision making process.

There are allegations about pictures being made about Marcos Madrigal by someone. However, it is hard to tell who it is alleged to have committed the acts complained of. Looking further on in the Complaint, there are allegations that Marcos Madrigal was retaliated against based upon his filing of a complaint with the EEOC.

-11-

Apparently, he dropped that for fear of retaliation. However, there is absolutely no showing anywhere that anyone retaliated against him because of his filing of the EEOC complaint. He dropped that on his own.

There is no showing anywhere that his employment was adversely affected because he engaged in protected activity pursuant to the Elliott-Larsen Civil Rights Act, being MCLA 37.2101, et seq.

One comment needs to be made regarding any alleged intentional acts by Chief Dobson in reference to discrimination. The Plaintiffs may possibly try to allege that a comment that was attributed to the Chief by Curtis McGuire and Gary Dell during a conversation involving the three of them concerning Marcos Madrigal constitutes intentional discrimination. The comment, at most, was that Marcos Madrigal was referred to as that Mexican from Ecorse. There is no showing that that comment went any further than the confines of that particular office until someone besides the Chief decided to disseminate it. Further, there is no showing that that comment had anything to do with any decisions the Chief may have made involving Marcos Madrigal. As a matter of fact, Gary Dell testified that he is not aware of the Chief ever exhibiting a hostile or malicious attitude towards any of the employees. He is not aware of his engaging in any other type of discriminatory actions.

Officers may be concerned with the way he runs the department and they might describe it as being somewhat iron-fisted. However, there is no showing that he does anything other than treat everybody equally, whether it is doling out punishment or accolades. There is no basis for the discrimination claim as filed by Marcos Madrigal and

-12-

the Motion for Summary Judgment should be granted in this instance.

## Conclusion

Marcos Madrigal has filed this Complaint against the Defendants alleging violations of Title VII of the Federal Act and the Elliott-Larsen Civil Rights Act. However, he has failed to demonstrate any discriminatory acts on the part of the City and/or Chief Dobson. The Complaint alleges five specific disciplines that Marcos Madrigal has received during his tenure with the Department. Four of those disciplines resulted in discipline being handed down to Marcos Madrigal which he accepted by signing an acknowledgment of the same. Those disciplines are marked as Exhibits 2-5. He had to acknowledge the wrongdoing and had to accept the discipline. He had remedies by way of appeal and other grievance procedures which he opted not to be proceed with. The final discipline as alleged resulted in his receiving probation for a year. That was the result of a Civil Service Commission Hearing.

The false imprisonment claim fails if for no other reason than it is barred by governmental immunity. There is no gross negligence allegation in the Complaint and as such the same is barred and should be stricken. Even if it was to survive governmental immunity, it would be barred as there was probable cause to make the arrest as indicated in Exhibit 6. The fact that there was no warrant issued has no bearing on the false arrest and imprisonment issue.

The Plaintiffs have failed to come forward with any evidence to support a discrimination claim and a Motion for Summary Judgment should be granted by this Court.

-13-

WHEREFORE your Defendants pray that this Honorable Court grant their Motion together with the awarding of costs and attorney fees so wrongfully incurred.

                        Respectfully submitted,

                        PEDERSEN, KEENAN, KING,
                        WACHSBERG & ANDRZEJAK, P.C.

                        PAUL E. PEDERSEN (P 24355)
                        Attorney for Defendants
                        4057 Pioneer Drive, Suite 300
                        Commerce Twp., Michigan 48390-1363
                        (248) 363-6400

Dated: September 3, 2002

## AFFIDAVIT OF PAUL E. PEDERSEN

STATE OF MICHIGAN )
)SS
COUNTY OF OAKLAND )

Paul E. Pedersen, being first duly sworn, deposes and states that he is the attorney who prepared the foregoing Motion and supporting documents and the contents of the same are true to the best of his information, knowledge and belief.

_____
Paul E. Pedersen

Subscribed and sworn to before me this 3rd day of September, 2002.

_____
Catherine M. Weckesser, Notary Public
Oakland County, MI
My Commission Expires: 5-20-06



FILED '02 SEP -3 P1:42
U.S. DISTRICT COURT
EAST DIST. MICH
DETROIT

PEDERSEN, KEENAN, KING, WACHSBERG & ANDRZEJAK, P.C.

## PROOF OF SERVICE

STATE OF MICHIGAN  )
                   )SS
COUNTY OF OAKLAND)

Kathlene Knipp, being first duly sworn, deposes and states that on the 3rd day of September, 2002, she served a true copy of the within Motion for Summary Judgment upon the following persons:

RAYMOND GUZALL III (P60980)
Attorney for Plaintiffs
30665 Northwestern Hwy., Suite 255
Farmington Hills, MI 48334

S. RANDALL FIELD (P 31841)
Co-Counsel for Defendants
34405 W. Twelve Mile Road, Suite 200
Farmington Hills, MI 48331

KENNETH D. KRUSE (P16271)
Attorney for Defendants
7000 Roosevelt Ave., #100
Allen Park, MI 48101

by depositing same in the United States mail with postage fully prepaid thereon.

_____
KATHLENE KNIPP

Subscribed and sworn to before me this 3rd day of September, 2002.

_____
Catherine M. Weckesser, Notary Public
Oakland County, MI
My Commission Expires: 5-20-06

PEDERSEN, KEENAN, KING, WACHSBERG & ANDRZEJAK, P.C.

FILED '02 SEP -3 P1:42

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED